UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| TARA BALES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:08-CV-422 |
| | ) | (VARLAN/SHIRLEY) |
| MORGAN COUNTY, TENNESSEE, | ) | |
| MORGAN COUNTY SHERIFF'S DEPARTMENT, | ) | |
| SHERIFF DENNIS LEDBETTER, in his official | ) | |
| and individual capacities, and | ) | |
| BILLY WARD, in his official capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION**

This civil action is before the Court on defendants Morgan County, Tennessee, Morgan County Sheriff's Department, Sheriff Dennis Ledbetter, and Billy Ward's Motion for Summary Judgment [Doc. 12]. Plaintiff has filed a response to the motion for summary judgment [Doc. 17]. The motion is now ripe for this Court's consideration.

**I.     Background**

Plaintiff was employed by the Morgan County Sheriff's Department (the "Sheriff's Department") from May 2003 until October 15, 2007 [Doc. 1, ¶ 9]. Sheriff Ledbetter was installed as the Sheriff of Morgan County in September 2006, and hired Mr. Ward to serve as the Jail Administrator [*Id.*, ¶ 10]. Mr. Ward was plaintiff's supervisor during the relevant period [*Id.*, ¶ 11].

Plaintiff alleges that Mr. Ward began making "inappropriate comments of a sexual nature" to her soon after meeting her, and that these comments continued for the balance of her employment with the Sheriff's Department [*Id.*, ¶ 12]. Plaintiff complained to Sheriff Ledbetter about Mr. Ward's behavior on or about May 18, 2007 [*Id.*, ¶ 15]. She alleges that the "unwelcome conduct" of Mr. Ward was "sufficiently severe or pervasive so as to unreasonably interfere with [her] work performance," and "created an intimidating, hostile and offensive work environment" [*Id.*, ¶ 21]. On or immediately after May 18, 2007, Sheriff Ledbetter called a meeting which included plaintiff, and assured her that he would address the problem [*Id.*, ¶ 16].

Beginning in approximately the last week of June 2007, plaintiff took medical leave for a condition unrelated to the alleged sexual harassment [*Id.*, ¶ 18]. Plaintiff was scheduled to return from that medical leave on October 15, 2007 [*Id.*]. Plaintiff alleges that, when she took medical leave, she was working the day shift, from 7:00 a.m. to 7:00 p.m. [*Id.*, ¶ 24]. She alleges further that Sheriff Ledbetter took no action to discipline Mr. Ward while she was on medical leave [*Id.*, ¶ 19].

Plaintiff alleges that she contacted the Sheriff's Department prior to her return to work on October 15, 2007, and was advised that she was scheduled to work the night shift upon her return [*Id.*, ¶ 25]. She alleges that her supervisors, including Sheriff Ledbetter, were aware that her family circumstances made it "impossible" for her to work the night shift [*Id.*]. Until October 15, 2007, plaintiff had only been assigned to the day shift [*Id.*]. Plaintiff alleges that she was forced to resign her employment on October 15, 2007 as a result of this

change in circumstances [*Id.*, ¶ 27]. She alleges further that the proposed transfer to the night shift amounted to a constructive discharge [*Id.*, ¶ 26].

Plaintiff filed the complaint [Doc. 1] in this case on October 15, 2008, raising the allegations just described, and bringing an action pursuant to Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"). Mr. Ward filed a motion to dismiss the claims against him in his individual capacity [Doc. 7] on December 12, 2008, arguing that supervisors cannot be held liable under Title VII. This Court granted that motion on January 26, 2009 [Doc. 11].

Defendants filed an answer [Doc. 9] on January 22, 2009. Defendants filed a motion for summary judgment [Doc. 12] on July 7, 2009. Plaintiff filed a response to the motion for summary judgment [Doc. 17] on August 21, 2009.

The Court has carefully considered the motion for summary judgment and the response in light of the applicable law. For the reasons that follow, defendants' motion for summary judgment will be granted in part and denied in part.

## II. Standard of Review

Summary judgment is proper only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of establishing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986). The Court views the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party.

3

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Id.* at 250. The judge does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Thus, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial–whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

**III.  Analysis**

Defendants argue in their motion for summary judgment that this case presents no genuine issues of material fact, and that the defendants are therefore entitled to judgment as a matter of law [Doc. 12]. Plaintiff disagrees [Doc. 17]. The parties are nevertheless in basic agreement as to the issues currently before the Court. These issues are:

(1)  Whether the Sheriff's Department is subject to suit;

(2)  Whether qualified immunity shields Sheriff Ledbetter from the claims raised against him in his individual capacity;

(3) Whether the claims made against Sheriff Ledbetter and Mr. Ward are improper and redundant, given that plaintiff has also filed suit against Morgan County;

(4) Whether plaintiff's claim for retaliation under Title VII can withstand summary judgment; and

(5) Whether plaintiff's Title VII claims can withstand summary judgment.[1]

[Docs. 12, 17]. As to the first issue, defendants argue that a county sheriff's department cannot be sued [Doc. 14]. Plaintiff concedes this point "as long as [the d]efendants agree that Morgan County would be responsible for any actions on the part of Sheriff Ledbetter, and/or other members of the Morgan County Sheriff's Administration" [Doc. 17]. Similarly, as to the third issue, defendants argue that any claims against Sheriff Ledbetter or Mr. Ward in his official capacity should be dismissed as redundant because plaintiff has also filed suit against Morgan County [Doc. 14]. Plaintiff also concedes this point, again "provided the [d]efendants agree that Morgan County is responsible for the actions or inactions of Sheriff Ledbetter and [Mr.] Ward" [Doc. 17].

Defendants are correct that police departments cannot be sued. *Jones v. Union County*, 296 F.3d 417, 421 (6th Cir. 2002); *see also Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) ("[T]he [p]olice [d]epartment is not an entity which may be sued."). The proper party to be sued is instead the county which the police department serves. *Matthews*, 35 F.3d at 1049. Moreover, a "suit against an individual in his official capacity is the

---

[1] The Court notes that even though plaintiff's retaliation claim, discussed *infra* Part III.B, also arises under Title VII, the parties have treated it separately from her claim of discrimination under Title VII. The Court will thus treat it separately as well.

5

equivalent of a suit against the governmental entity." *Id.*; *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("Suits against state officials in their official capacity . . . should be treated as suits against the state."). Thus, in light of the parties' agreement and the applicable law, the Sheriff's Department will be dismissed as a party to this case. Sheriff Ledbetter and Mr. Ward will be dismissed as parties to this case in their official capacities. For the reasons explained *infra* Part III.A, however, Sheriff Ledbetter will not be dismissed as a party to this case in his individual capacity.

Having resolved issues (1) and (3), the Court now turns to consideration of the issues that remain.

### A. Whether Qualified Immunity Shields Sheriff Ledbetter from the Claims Raised Against Him in His Individual Capacity

The Court now considers whether Sheriff Ledbetter is entitled to qualified immunity. Qualified immunity–also known as "good faith" immunity–is an affirmative defense that must be pleaded by the government official invoking it. *Harlow v. Fitzgerald*, 457 U.S. 800, 814 (1982). Once the defense is raised, however, the burden is upon the plaintiff to demonstrate that the official is not entitled to qualified immunity. *Miller v. Admin. Office of the Courts*, 448 F.3d 887, 893 (6th Cir. 2006). The defense shields government officials, including law enforcement officers, from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310 (6th Cir. 2005). It exists to protect public officials "from 'undue interference with their duties and

from potentially disabling threats of liability.'" *Sample v. Bailey*, 409 F.3d 689, 695 (6th Cir. 2005) (quoting *Elder v. Holloway*, 510 U.S. 510, 514 (1994)).

To determine whether qualified immunity exists in a given case, the Sixth Circuit typically employs a two-step analysis, first asking whether (1) considering all of the allegations in the light most favorable to the injured party, a statutory or constitutional right has been violated; and, second, whether (2) that right was clearly established. *Miller*, 448 F.3d at 893; *Perez v. Oakland County*, 466 F.3d 416, 426-27 (6th Cir. 2006). Panels of the Sixth Circuit occasionally employ a third step to "increase the clarity of the proper" qualified immunity analysis, inquiring "whether the plaintiff has offered sufficient evidence 'to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.'" *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003) (quoting *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (en banc)); *Estate of Carter*, 408 F.3d at 311 n.2. "In many factual contexts, however . . . the fact that a right is 'clearly established' sufficiently implies that its violation is objectively unreasonable." *Estate of Carter*, 408 F.3d at 311 n.2.

With respect to the first step in this analysis, plaintiff alleges a violation of her right to a non-hostile work environment under Title VII.[2] A "plaintiff may establish a violation

---

[2] 42 U.S.C. § 2000e-2(a)(1) provides that "[i]t shall be an unlawful employment practice for an employer . . . to . . . discharge any individual, or otherwise to discriminate against any individual with respect to h[er] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ." Title VII encompasses claims of sex discrimination arising as a result of a hostile work environment, *see* discussion *infra* Parts III.A, C.

7

of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986). To establish a prima facie case based upon coworker harassment amounting to discrimination, as plaintiff alleges here, a plaintiff must establish that (1) the sexual harassment was unwelcome; (2) the harassment was based on sex; (3) the harassing behavior was sufficiently severe or pervasive to affect the terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment; and that (4) the employer knew or should have known of the harassment and failed to take immediate and appropriate corrective action. *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 332 (6th Cir. 2008).

Defendants assume for purposes of summary judgment that plaintiff can satisfy the first three of these elements [Doc. 14].[3] They argue, however, that she cannot satisfy the fourth element, because Sheriff Ledbetter took reasonable steps to prevent and correct the sexually harassing behavior [*Id.*]. Defendants contend that, when plaintiff informed Sheriff Ledbetter of Mr. Ward's actions, Sheriff Ledbetter conducted an initial investigation and then turned the investigation over to the district attorney general, who involved the Tennessee Bureau of Investigation in the matter [*Id.*]. Defendants contend further that, at the conclusion

---

[3] Defendants actually rely on a five-prong test from an older Sixth Circuit case, *see Rabidue v. Osceola Ref. Co.*, 805 F.2d 611, 620 (6th Cir. 1986), but concede that plaintiff can satisfy the first four prongs of that test. The first four prongs of the *Rabidue* test substantially mimic the first three prongs of the *Hawkins* test. The final prong of the *Rabidue* test mimics the final prong of the *Hawkins* test: both require the plaintiff to demonstrate that the employer "failed to implement prompt and appropriate corrective action" after becoming aware of the charged sexual harassment. *Rabidue*, 805 F.2d at 621; *Hawkins*, 517 F.3d at 332. The Court thus analyzes the parties' arguments under the more recent *Hawkins* framework.

8

of his investigation, Sheriff Ledbetter admonished Mr. Ward for his actions, and demoted him to a position outside the jail, where the harassment allegedly occurred [*Id.*].

Plaintiff argues in response that she can satisfy the fourth element of her hostile work environment claim because Sheriff Ledbetter failed to take immediate and appropriate corrective action when he became aware of the harassment [Doc. 17]. She explains that, while on medical leave, she contacted Sheriff Ledbetter to ask him about the actions he planned to take to address her complaints of harassment [*Id.*]. Plaintiff explains that Sheriff Ledbetter advised her that he did not know what to do [*Id.*]. She explains further that she had been promoted to the rank of sergeant while on medical leave, and then assigned to the night shift–the only available position for a sergeant at the time–notwithstanding that she was caring for two small children, and that her husband, an officer with the Wartburg Police Department, was assigned to the night shift, facts of which Sheriff Ledbetter was aware [*Id.*]. She also argues that Mr. Ward's relocation to a position outside of the jail did not constitute a "demotion" because the reassignment was to a position that Mr. Ward had actually requested [*Id.*].

Viewing the evidence in the light most favorable to plaintiff, the Court finds that she can establish that Sheriff Ledbetter failed to take "immediate and appropriate corrective action" in response to the allegations of sexual harassment in this case. Sheriff Ledbetter called a meeting to discuss the alleged harassment after plaintiff reported it to him, but then took little additional direct action to resolve the situation, instead turning the matter over to the district attorney general to process. He subsequently relocated the officer accused of

9

harassment, but that relocation was to a position that the officer had already sought, and which kept the officer in relatively close proximity to plaintiff. Sheriff Ledbetter then promoted plaintiff to sergeant without notifying plaintiff, a move which forced her into a night shift he knew she could not work. For these reasons, again when viewing the evidence in a light most favorable to plaintiff, plaintiff can satisfy the fourth element of her discrimination claim. As a result, she can also demonstrate that her rights have been violated under the first step of the qualified immunity analysis.

Defendants concede that plaintiff can satisfy the second step in the qualified immunity analysis, "since it was 'clearly established' that Mr. Ward's alleged comments were harassing to" plaintiff [Doc. 14]. The Court thus moves to the optional third step of the qualified immunity analysis, examining whether plaintiff has "offered sufficient evidence to indicate that what [Sheriff Ledbetter] allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Miller*, 448 F.3d at 893. If the official's mistake as to what the law requires is reasonable, then the official is entitled to the immunity defense. *Sample*, 409 F.3d at 696.

Here, again viewing the facts in the light most favorable to plaintiff, the Court finds that plaintiff has offered sufficient evidence to demonstrate that Sheriff Ledbetter's actions were "objectively unreasonable" in light of plaintiff's clearly established constitutional rights. The Court recalls its analysis under the first prong of the qualified immunity analysis: Sheriff Ledbetter advised plaintiff that he did not know what to do when plaintiff asked him what actions he planned to take to address her allegations of sexual harassment [Doc. 17].

10

Sheriff Ledbetter promoted plaintiff during her absence to a position he knew she could not take [*Id.*]. And he transferred plaintiff's alleged harasser to a position the alleged harasser had requested, and which would keep him in close proximity to plaintiff [*Id.*]. A jury might reasonably find these actions to be objectively unreasonable in light of plaintiff's clearly established constitutional rights. As a result, qualified immunity cannot shield Sheriff Ledbetter in this case.

> **B.     Whether Plaintiff's Claim for Retaliation Under Title VII Can Withstand Summary Judgment**

The Court next considers whether plaintiff's claim for retaliation under Title VII can withstand summary judgment. Defendants argue that it cannot. Title VII "protects employees from retaliation for having opposed an employer's unlawful actions." *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 516 (6th Cir. 2009). To establish a prima facie case of retaliation under Title VII, a plaintiff must demonstrate that (1) she engaged in activity protected by Title VII; (2) the defendant knew of her exercise of her protected rights; (3) the defendant subsequently took an adverse employment action against the plaintiff, or subjected her to severe or pervasive retaliatory harassment; and that (4) there was a causal connection between the plaintiff's protected activity and the adverse employment action. *Id.* Defendants concede for purposes of summary judgment that the first and second retaliation elements are satisfied [Doc. 14]. They contend, however, that plaintiff cannot satisfy the third or fourth elements of her retaliation claim [*Id.*].

With respect to the third element, plaintiff has provided evidence that she was "constructively discharged" from her employment with the Sheriff's Department after reporting Mr. Ward's conduct because she was (1) promoted to the position of sergeant while on medical leave, and was then (2) assigned to the night shift, the only shift available for a sergeant at that time. Plaintiff further alleges that the defendants knew that this promotion and transfer created "working conditions . . . so difficult or unpleasant that a reasonable person in [plaintiff's] shoes would have felt compelled to resign." *Talley v. Family Dollar Stores, Inc.*, 542 F.3d 1099, 1105 (6th Cir. 2008)). Viewing the evidence in the light most favorable to plaintiff, the Court finds that she has raised a genuine issue of material fact as to whether the defendants took an adverse employment action against her amounting to a constructive discharge.

Defendants' arguments that plaintiff was not constructively discharged miss the mark. Defendants argue first that plaintiff's reassignment to the night shift was a result of a promotion, to the sergeant position [Doc. 14]. Plaintiff argues in response that she requested a promotion to sergeant for a "very specific opening that existed on the day shift," and that she would not have applied for a promotion to the position of night shift sergeant were that position available [Doc. 17]. Plaintiff argues further that the reason only one opening existed for a sergeant when she was promoted was because the sergeant on the night shift was transferred to the day shift prior to her promotion [*Id.*]. In light of plaintiff's arguments, this Court cannot say as a matter of law that her promotion to a position which she did not seek,

12

and which imposed conditions under which she could not work, did not constitute a constructive discharge.

Defendants also contend that family circumstances are insufficient as a matter of law to establish a constructive discharge [Doc. 14]. Defendants argue that plaintiff's decision to resign arose not because the conditions of work were "objectively intolerable to a reasonable person," *Policastro v. Nw. Airlines, Inc.*, 297 F.3d 535, 539 (6th Cir. 2002), but rather because her "family circumstances somehow 'made it impossible' for her to work the night shift" [Doc. 14]. Defendants contend that the family-related reasons plaintiff offers in support of her constructive discharge argument fail as a matter of law.

Defendants are wrong. Plaintiff has offered substantial evidence that her transfer to the night shift would be "objectively intolerable to a reasonable person." First, she explains that she "had never worked the night shift during her course of employment with the Sheriff's Department with the exception of a brief period during her initial training" [Doc. 17]. Second, she explains that, at the time of her promotion, her husband was assigned to the night shift patrol with the Wartburg Police Department, a fact which was known to the Sheriff's Department [*Id.*]. Third, and finally, plaintiff explains that she and her husband had two children under the age of five when she was promoted [*Id.*]. Absent some change in her husband's employment circumstances, plaintiff's acceptance of the promotion to night shift sergeant would have required her to leave her minor children unsupervised at home on a regular basis. Such a prospect may properly be characterized as "so difficult or unpleasant" that a reasonable person in plaintiff's shoes would have felt compelled to resign.

13

Finally, defendants argue that plaintiff gave the defendants "no opportunity to resolve her concerns" [Doc. 14]. They cite an Eighth Circuit decision for the proposition that an "employee who quits without giving his employer a reasonable chance to work out a problem has not been constructively discharged." *Tidwell v. Meyer's Bakeries, Inc.*, 93 F.3d 490, 494 (8th Cir. 1996). The Court is not bound by this precedent. Moreover, plaintiff has alleged facts that successfully refute defendants' argument. She explains that, after she was made aware that she would be transferred to the night shift, she contacted the chief jailer at the Sheriff's Department, who told her that "the change had been made by 'higher-ups,'" and that "there was nothing that could be done" [Doc. 17]. This evidence suggests not that plaintiff's employer was not given a reasonable chance to resolve the situation, but that a reasonable chance was given to her employer and was simply not taken. Plaintiff has therefore raised a genuine issue of material fact as to the third element of her retaliation claim.

With respect to the fourth element of her retaliation claim, plaintiff has provided evidence that there was a causal connection between the protected activity and the adverse employment action taken by defendants. Rather than being promoted as requested, plaintiff was promoted to a position which the defendants knew she would be unable to hold [Doc. 17]. The defendants subsequently promoted another officer to the position formerly held by plaintiff, making it "impossible" for her to continue her employment in that position [*Id.*]. This activity all occurred within three months of plaintiff's bringing her complaint to the defendants' attention [*Id.*]. No adverse personnel action had ever been taken against plaintiff

14

before this time [*Id.*]. Based on these allegations, a reasonable finder of fact could draw a causal connection between plaintiff's reporting her concerns and her constructive discharge.

Defendants argue that plaintiff "resigned because she did not want to work the night shift" [Doc. 14]. They argue further that there is "no evidence to show that her reporting of the inappropriate comments was causally connected to her allegedly constructive discharge" [*Id.*]. When viewed in the light most favorable to plaintiff, however, the evidence shows just the opposite. There is ample evidence to suggest that plaintiff resigned because the alternative was to leave her minor children at home unsupervised for long periods of time. As just explained, there is also evidence to suggest that her constructive discharge was directly connected to her reporting of harassment to her superiors at the Sheriff's Department. Plaintiff has thus raised a genuine issue of material fact as to the fourth element of her retaliation claim.

This Court will deny defendants' motion for summary judgment as to plaintiff's retaliation claim. The Court now considers plaintiff's Title VII claims.

### C.  Whether Plaintiff's Title VII Claims Can Withstand Summary Judgment

Finally, the Court considers whether plaintiff's Title VII claims can withstand summary judgment. Defendant argues that they cannot. "A violation of Title VII is established if 'discrimination based on sex has created a hostile or abusive work environment.'" *Hawkins*, 517 F.3d at 332 (quoting *Burnett v. Tyco Corp.*, 203 F.3d 980, 982 (6th Cir. 2000)). The Court has already set forth the elements of a Title VII hostile work environment claim *supra* Part III.A.

15

Defendants do not address plaintiff's hostile work environment claim directly. Instead, they argue that plaintiff cannot demonstrate that she was "discriminated against because of her gender" [Doc. 14]. In support of their argument, defendants set forth the elements of a prima facie case of gender discrimination, which require the plaintiff to show that (1) she is a member of a protected group; (2) she was subject to an adverse employment action; (3) she was qualified for the position; and that (4) she was replaced by a person outside the protected class, or similarly-situated employees were treated more favorably than she was. *Peltier v. United States*, 388 F.3d 984, 987 (6th Cir. 2004). Defendants concede that plaintiff can satisfy the first and third elements of this test, but argue that she cannot satisfy the second and fourth elements [Doc. 14].

The defendants misapprehend plaintiff's claim. Plaintiff does not bring her Title VII sex discrimination claim under the theory defendants have proposed. Instead, she advances her claim under a hostile work environment theory,[4] which, as the *Hawkins* elements demonstrate, can constitute discrimination under Title VII. *See Vinson*, 477 U.S. at 64 ("Without question, when a supervisor sexually harasses a subordinate because of the subordinate's sex, that supervisor 'discriminates' on the basis of sex."). Defendants do not argue that plaintiff cannot prevail on those elements. Accordingly, their motion for summary judgment on plaintiff's Title VII claims will be denied.

---

[4] *See* Doc. 1, ¶ 21 (alleging that the "unwelcome conduct of Mr. Ward was sufficiently severe or pervasive so as to unreasonably interfere with [p]laintiff's work performance and created an intimidating, hostile and offensive work environment").

16

## IV. Conclusion

For the reasons set forth above, defendants' Motion for Summary Judgment [Doc. 12] will be granted in part and denied in part.

An order reflecting this opinion will be entered.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE